|   |   |   |
|---|---|---|
| 1 | | HONORABLE RONALD B. LEIGHTON |
| 2 | | |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| SAFECO INSURANCE COMPANY OF AMERICA, | CASE NO. C18-5368 RBL |
|---|---|
| Plaintiff, | ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| BENROY GEORGE WOLK, et al., | |
| Defendants. | |

THIS MATTER is before the Court on Plaintiff Safeco's Motion for Summary Judgment [Dkt. # 13]. Defendants Ben and Michelle Wolk (a married couple) purchased two Safeco Homeowners insurance policies. A minor, female guest in the Wolk home, Nicholls, claims that Ben[1] sexually assaulted her from 2014-2016. She sued in Pierce County Superior Court. Her complaint specifically alleges:

---

[1] This Order will refer to the Wolks by their first names for clarity. No disrespect is intended.

ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 1

> 5. During Plaintiff's childhood, Defendant Benroy Wolk sexually abused Plaintiff Ruby Nicholls on multiple occasions, between the years 2014 and 2016 and continued to contact her in 2017. Defendant Michelle Wolk, wife of Defendant Benroy Wolk, knew or should have known of the behavior of Defendant Benroy Wolk complained of herein, and had a duty to protect Plaintiff Ruby Nicholls from harm, which she failed to do. Defendant Michelle Wolk, by her actions and inactions, made it more difficult for Plaintiff to make any complaint about the sexual abuse or to protect herself from said abuse, and further, by her actions and inactions, contributed to the occurrence of the sexual abuse.

[Dkt. # 1 at p. 11] Nicholls' core claim is that Ben and Michelle "are liable for childhood sexual abuse constituting the torts of battery assault, outrage, and negligent supervision and care." [*Id.*]

The Wolks tendered the defense of the case to Safeco. Safeco denied coverage for Ben, and began defending Michelle under a reservation of rights. It commenced this Declaratory Judgment Action to obtain a judicial determination of its obligations under the policy[2]. It now seeks summary judgment.

Safeco argues that Nicholls' claims against the Wolks are not even potentially covered under their Safeco policies for three primary reasons: (1) the complaint does not allege a covered "occurrence," because the bodily injury of which Nicholls complains—sexual assault—was not an accident; it was intentional. Safeco argues that this analysis applies even to Nicholls' claim that Michelle "negligently supervised" her husband (because she knew or should have known he was abusing her, and failed to stop it). It argues that "where an abuser's allegedly negligent acts toward a victim are close in space and time, are inextricably linked, to a continual pattern of sexual abuse of the victim, an intent to injure can be inferred as a matter of law."

---
[2] There are two identical policies. This Order will refer to 'the policy" for clarity.

ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 2

(2) Safeco argues that its policies exclude coverage for liability resulting from intentional acts by "*any* insured" under the policy. Because Ben's acts were indisputably intentional, it claims, Michelle's allegedly negligent failure to stop them is also excluded.

(3) The policies expressly exclude coverage for liability "arising out of physical abuse or sexual molestation." Safeco argues that the claims in Nicholls' complaint against both Wolks necessarily "arise out of sexual abuse." Safeco asks the Court to grant summary judgment and declare that it has no obligation to defend or indemnify either Wolk on the claims asserted against them by Nicholls.

The Wolks argue[3] first that the motion is premature, because they have propounded but not received responses to discovery into the Safeco's historic interpretation of its homeowner's policies and the exclusions at issue here. They argue that Nicholls' complaint conceivably alleges an occurrence against each of them—a negligent supervision claim against Michelle, and an allegation that Ben "contacted" Nicholls in 2017 (but not that he sexually abused her at that time).

The Wolks argue that the policies' exclusions for intentional acts and sexual abuse must be construed narrowly, and that for the same reasons that Nicholls' complaint alleges an "occurrence," it alleges a not-excluded negligent supervision claim against Michelle, and a not-excluded "2017 contact" claim against Ben. They argue that the policies' "intentional acts" exclusions do not apply, because Michelle's allegedly negligent supervision of her husband, Ben, could be the efficient proximate cause of his sexual abuse of Nicholls. They argue that a recent Washington Supreme Court opinion, *Xia v. ProBuilders Specialty Ins. Co. RRG*, 188 Wn.2d 171

---

[3] Nicholls is also a defendant in this declaratory judgment action, and she joins in the Wolks' opposition to Safeco's motion.

(2017), controls over the earlier cases upon which Safeco relies. Specifically, they claim that under *Xia's* refined articulation of the efficient proximate cause rule, Nicholls' complaint can be read as asserting that Michelle's negligence—essentially, that she knew her husband was abusing Nicholls and failed to stop him—may have been the efficient proximate cause of the bodily injuries she suffered. And they argue that Nicholls' complaint alleges that Michelle's negligence made it more difficult for her to report the sexual abuse, causing damage separate from the abuse itself.

The Wolks also argue that Safeco effectively seeks to add a "negligent supervision" clause to the sexual abuse exclusion. They argue that to the extent Nicholls alleges a claim based on Ben's negligent 2017 contact, the sexual abuse exclusion does not apply to that claim.

**A. Legal Standards.**

   1. <u>Summary Judgment Standard.</u>

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has

met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. 242, 248 (1986).

  2. <u>Declaratory Judgment regarding the Duty to Defend.</u>

  "Interpretation of an insurance contract is a question of law." *Woo v. Fireman's Fund Ins. Co.*, 161 Wash. 2d 43, 52 (2007). Terms are to be interpreted as the "average person purchasing insurance" would understand them. *Id*. While the insured has the burden of proving that claims fall within a grant of coverage, the insurer has the burden of proving that an exclusion bars coverage. *See McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731 (1992). The duty to defend is broader than the duty to indemnify, and arises at the time the action is filed based on the potential for liability. *Woo*, 161 Wash. 2d at 52. "If the insurer is unsure of its obligation to defend in a given instance, it may defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend." *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wash. 2d 751, 761 (2002).

  In Washington, in a declaratory judgment action, the duty to defend is determined by the facts alleged in the complaint. *Indian Harbor Ins. Co. v. Transform LLC*, 2010 WL 3584412, at *3 (W.D. Wash. Sept. 8, 2010) (citing *Holland Am. Ins. Co. v. Nat'l Indem. Co.*, 75 Wash. 2d 909, 911 (1969)). The insurer is permitted to use the "eight corners rule" to determine whether, on the face of the complaint and the insurance policy, there is an issue of fact or law that could

conceivably result in coverage under the policy. *See Xia v. ProBuilders Specialty Ins. Co. RRG*, 188 Wn.2d 171, 182, 400 P.3d 1234, 1240 (2017) (internal citations omitted). If there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend. *Id*. "[I]f a complaint is ambiguous, a court will construe it liberally in favor of triggering the insurer's duty to defend." *Woo*, 161 Wash. 2d at 53. Although an insurer may look outside the complaint if the allegations are contradictory or ambiguous, or if coverage is unclear, the insurer may only rely on extrinsic facts to *trigger* the duty to defend. *Grange Ins. Ass'n v. Roberts*, 179 Wash. App. 739, 752 (2013) (quoting *Woo v. Fireman's Fund Ins. Co.*, 161 Wash. 2d 43, 52-54 (2007)). "After obtaining a declaration of noncoverage, an insurer will not be obligated to pay from that point forward." *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wash. 2d 872, 885 (2013) (internal quotations omitted).

**B. There is no need for discovery into the parties' intent on the meaning of the policy.**

As an initial matter, a summary judgment motion in a declaratory judgment action like this one, based on the "eight corners" of the policy and the underlying complaint, does not typically require discovery into the parties' respective intent on the meaning of the policy and its exclusions. As Safeco argues, its policy is a form policy using the same language in all such Safeco policies since well before the acts giving rise to the complaint. There is no evidence that the Wolks had some unique intent with respect to the form policy's language. There is no need for discovery into Safeco's interpretation of the policy or its exclusions, and the Wolks' request to defer the motion pending such discovery is DENIED.

**C. Nicholls' Complaint does not allege an occurrence.**

The first of Safeco's related arguments is that there is no "occurrence" alleged in Nicholls' complaint. An occurrence is an "accident"—an unusual, unexpected, and unforeseen happening. *Grange v. Brosseau*, 113 Wn.2d 91, 95 776 P.2d 123 (1989). Safeco argues an

accident is never present when a deliberate act is performed, unless some additional, unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. *Detweilier v J.C. Penney Casualty Ins. Co.*, 110 Wn.2d 99, 751 P.2d 282 (1988).

The Wolks first that argue that Nicholls' complaint alleges a negligence claim against Michelle, based on her knowledge of and failure to prevent the intentional harm by Ben. They claim that that claim is conceivably covered, citing *Western Protectors Ins. Co. v. Shaffer*, 624 F. Supp.2d 1292 1299 (W.D. Wash 2009) (victim's negligence claim against abuser's husband could conceivably impose liability; insurer's summary judgment motion denied); and *Corporation of the Catholic Archbishop of Seattle v Arrowood Indemnity Co.*, 2015 WL 8212719 at * (W.D. Wash December 8, 2015) ("intentional sexual abuse [by a priest], as opposed to negligent supervision [by the archdiocese], does not constitute an occurrence because it is not accidental.")

Safeco argues that Nicholls' complaint actually alleges that the negligence claim *arose from* the abuse: its "Cause of Action" alleges that the Wolks are liable for "childhood sexual abuse constituting the torts of battery, assault, outrage and negligent supervision and care." [Dkt. 1 at 11].

The Wolks also argue that Michelle's allegedly negligent supervision of her husband may be the efficient proximate cause of his sexual abuse of Nicholls. There are at least two flaws with this argument, one legal and one factual. First, the efficient proximate cause rule provides coverage where "a covered peril sets in motion a causal chain, the last link of which is an uncovered peril." *Xia*, 400 P.3d at 140. While *Xia* may have suggested that the efficient proximate cause rule can theoretically apply in a broader-than-previously-thought[4] range of

---

[4] *Xia* explained: "[T]he efficient proximate cause rule remains an important part of Washington insurance law. Although we have never before applied the rule to a case with facts such as these, we see no reason to depart from

insurance coverage cases, its actual holding was not remarkable: a homeowner's claim that a negligently installed water heater unexpectedly poisoned her was not excluded by the "absolute pollution exclusion"[5] in the homebuilder's CGL policy. The efficient proximate cause of the injury was the negligent installation of the water heater, a covered peril.

*Xia* does not hold or suggest that the efficient proximate cause of an excluded intentional act can be negligence, or the negligent supervision of the intentional actor. Nor does any other case discussing the efficient proximate cause rule suggest that it can or should be applied in such a manner.

The factual flaw in the Wolks' argument is that Nicholls does not allege that Michelle's negligence *caused* the sexual abuse, or that if she knew or should have known it was going to occur *in the future*. Her complaint alleges that Michelle "knew or should have known of the behavior complained of herein"—Ben's sexual abuse of Nicholls—and that she "had a duty to protect" Nicholls, which she "failed to do." It is not possible that the efficient proximate cause of the sexual abuse was Michelle's knowledge that it was happening and her failure to stop it.

The complaint does not allege an occurrence covered by the policy, and on this basis alone Safeco's Motion for Summary Judgment is GRANTED. This Order will address the remaining arguments because they too result in a determination of no coverage and no duty to defend either Wolk in the underlying case.

---

the policies underpinning the rule's function." *Xia*, 400 P.3d at 1243. There is nothing in the opinion suggesting it meant to change the legal landscape with respect to the rule's application.

[5] The Court first concluded that existing Washington cases applying the "absolute pollution exclusion" only where the pollutant causing the injury was in fact "acting as a pollutant" were not in conflict with those holding that the exclusion did not apply where the "offending substance's toxic character was not central to the injury." *See Xia*, 400 P.3d at 1238 to 39, and case discussed therein. This aspect of the case similarly did not reverse or even alter pre-existing authority on the subject.

**D. The policy's intentional acts exclusion applies to Nicholls' claims.**

Safeco's policy specifically excludes[6] bodily injury "which is expected or intended by any insured or which is the foreseeable result of an act or omission *intended by any insured*[.]" [Dkt. 14 at 15; Policy at p 14, "Liability Losses we Do Not Cover 1.a." (Emphasis added)].

Safeco argues that Ben's abuse of Nicholls was intentional as a matter of law, and that because her claims against Michelle necessarily arose from those intentional acts, the policy specifically excludes them.

The Wolks argue (1) that the efficient proximate cause of Nicholls' claimed sexual abuse injury could be Michelle's negligence, and (2) Nicholls' complaint conceivably alleges a separate injury arising from Michelle's negligence (making it more difficult to report the abuse). The former issue is discussed above; The Wolks cite no cases holding that negligent supervision can be the efficient proximate cause of intentional abuse. And even if they did, there is no reading of the complaint in this case that would support the conclusion that Michelle's failure to act on knowledge that the abuse was occurring was the "initial" link in the causal chain leading to the abuse.

The second argument does not address the exclusion or the cases applying it in similar contexts. *See Caroff v, Farmers Ins Co.,* 155 Wn.App. 724, 261 P.2d 159 (1999) (victims' negligent supervision claim against sexual abuser's parents excluded by similar policy language); *Farmers Ins. Co. v Hembree* 54 Wn.App. 195, 773 P.2d 105, *review denied* 113 Wash.2d 1011, 779 P.2d 729 (1989) (same).

---

[6] The policy also excludes bodily injury "result[ing] from violation of criminal law committed by, *or with the knowledge or consent of any insured*." [Dkt. # 14 at 15; Policy at 14, "Liability Losses We Do Not Cover 1.b." (Emphasis added)]. Safeco quotes but does not specifically address this exclusion. But Nicholls' complaint alleges that Michelle "*knew of*" the (presumably criminal) sexual abuse and did nothing. This exclusion too expressly addresses Nicholls' claim against Michelle.

Nor is Nicholls' factual allegation that Ben continued to contact her in 2017 conceivably covered under the policy as a negligence claim against him. Even if the complaint seeks to assert a separate, unidentified claim based on that contact, the contact was intentional; there is no suggestion it was an accident. The policy excludes coverage for liability arising out of the intentional conduct of any insured. That the 2017 contact was not alleged to be sexual abuse is does not mean it was not intentional.

The Safeco policy's exclusion for the "intentional acts of any insured" applies to the claims against each Wolk, and it precludes coverage for Nicholls' claims against each of them. Safeco's Motion for Summary Judgment is GRANTED on this basis as well.

**E. The policy's sexual abuse exclusion applies to Nicholls' claims.**

Finally, Safeco's policy excludes coverage for bodily injury "arising out of physical or mental abuse, sexual molestation, or sexual harassment" [Dkt. # 14 at 17; Policy at 16, "Liability Losses We Do Not Cover" 1.k.]. Safeco argues that this exclusion too expressly excludes coverage for all of the claims asserted in Nicholls' complaint, as all necessarily "arise from" Ben's alleged sexual abuse.

The Wolks reiterate their arguments above, and argue that the claims against Michelle arise "not from sexual abuse, but from her own alleged negligence." They argue that Safeco is seeking to add to the sexual abuse exclusion an additional exclusion for negligent supervision. They also argue that the 2017 contact allegations against Ben do not arise out of his sexual abuse of her.

The Court disagrees. First, the negligent supervision claim relates directly to the sexual abuse; it necessarily *arises out of* that conduct. The policy language is broader than the "negligent supervision exclusion" Michelle claims Safeco is improperly reading into the policy, but it has the same effect on the facts alleged in the case: Claims arising out of sexual abuse are

excluded, even if they are couched in negligence. The same is true of the 2017 "contact" factual allegation. If and to the extent it is a stand-alone claim, it does not allege that the contact was negligent and, in any event, it clearly "arose out of" the prior sexual abuse: the purpose of the contact was to talk about that abuse. Safeco's Motion on this basis is GRANTED.

* * *

Safeco's Motion for Summary Judgment seeking a Declaratory Judgment that it has no obligation to defend or indemnify either Wolk from Nicholls' claims against them in *Ruby Nicholls v. Benroy George Wolk and Michelle Marcoe Wolk*, Pierce County Superior Court Cause Number 18-2-05410-4, is GRANTED.

IT IS SO ORDERED.

Dated this 25th day of October, 2018.

Ronald B. Leighton
United States District Judge